# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

PETROFLOW ENERGY CORPORATION, )
                                                  )
               Plaintiff, )
                                                  )
vs.                                                   )      Case No. 16-CV-700-TCK-JFJ
                                                  )
SEZAR ENERGY, L.P., and )
BRITTANY ENERGY, LLC, )
                                                  )
              Defendant(s). )

## OPINION AND ORDER

Before the Court are (1) Defendants Sezar Energy, L.P.'s and Brittany Energy, LLC's Motion for Summary Judgment (Doc. 47); (2) Motion for Partial Summary Judgment of Petroflow Energy Corporation and Brief in Support (Doc. 43); and (3) Defendants' Motion to Strike the Affidavit of Kim Booth (Doc. 51).

## I.     Factual Background[1]

On June 15, 2014, Plaintiff Petroflow Energy Corporation ("Plaintiff" or "Petroflow") entered into a "Central Prospect Participation Agreement" with Defendants Sezar Energy, L.P. ("Sezar") and Brittany Energy, LLC ("Brittany") (collectively, "Defendants"). All parties are in the business of acquiring, exploring for, developing, and producing oil and gas properties within Oklahoma. Prior to entering into the Central Prospect Participation Agreement (the "Agreement"), Plaintiff and Defendants had been independently drilling wells and building infrastructure in the Hunton Lime formation in several counties in eastern central Oklahoma referred to by the parties as the "Area of Mutual Interest," or "AMI." The Agreement states that the parties jointly desire to exchange working interests in the AMI and jointly develop the AMI. The Agreement notes that

---

[1] Unless otherwise indicated, the facts set forth below are undisputed.

Petroflow, Petroflow Canada Acquisition Corp., and Equal Energy Ltd. ("Equal") entered into an agreement scheduled to close on or before July 31, 2014 (the "Equal Acquisition") and that Plaintiff would own multiple oil and gas leases in the AMI upon closing its agreement with Equal. The Agreement states that it is effective June 15, 2014, but not actionable until the closing of the Equal Acquisition. The Equal Acquisition closed on July 31, 2014. A Joint Operating Agreement ("JOA") between Equal and Sezar is incorporated as Exhibit B to the Agreement.[2]

The parties dispute the meaning of certain terms and provisions in the Agreement and the parties' rights and obligations under the Agreement and JOA. Portions of the Agreement relevant to the present motions are reproduced below:[3]

> "AMI Area" means all the property described on Exhibit "A."
> . . .
>
> "Initial Project Wells" means the first three wells drilled.
>
> "Leasehold Interests" means the oil and gas leases and forced pooling orders/rights described on Exhibit "A" attached hereto, together with all other oil and gas leases, leasehold estates, subleases, forced pooled interests, mineral interests, operating rights and other rights, authorizing the owner thereof to explore for and produce oil, gas, and related hydrocarbons, and other minerals located in the AMI Area, which are all subject to the Petroflow Reserved ORRI, if applicable.
>
> "Other Project Wells" means, collectively the other wells mutually agreed to by the Parties in writing to be drilled in the AMI Area other than the Initial Project Wells.
> . . .

---

[2] Sezar is a Texas limited partnership controlled by Richard N. Azar, II ("Azar"). Brittany is also controlled by Azar, who substantially negotiated the Agreement on behalf of Defendants. Plaintiff notes that Azar was a board member of Petroflow at the time the Agreement was executed and suggests that individuals who negotiated on behalf of Petroflow were self-interested or negligent because of their personal and/or business relationships with Azar and Defendants. This issue is not necessary to disposition of the present motions, and the Court makes no findings in this Opinion and Order regarding Azar's role in the parties' negotiations.

[3] In the Agreement, "Sezar and Brittany are individually or collectively referred to as 'Participant.'" (Doc. 47-1, at 1.)

2

"Petroflow Reserved ORRI" means the overriding royalty interest in the Leasehold Interests to be retained by Petroflow, if applicable, equal to the difference of lease burdens of record and 20%.

. . .

"Properties" means collectively, the (a) Leasehold Interests, (b) Related Contracts, and (c) interests related to the foregoing.

. . .

2.1. Subject to the terms and conditions of this Agreement, Petroflow hereby agrees to sell, and Participant hereby agrees to buy, (i) an undivided working interest in the Properties covering or relating to the Initial Project Wells of 30.00% BPO; 30.00% APO, and (ii) an undivided working interest in Properties covering or relating to lands located in the AMI Area (excluding the Initial Project Wells, but including, without limitation, the Other Prospect Wells) of 30.00% BPO; 30.00% APO for Sezar or Brittany (if Sezar so designates) . . . .

2.2. Participant shall pay to Petroflow actual costs of the leases, title and other costs associated with the Leasehold Interests representing Participant's proportionate share of existing leasehold costs with a corresponding credit for any leasehold purchased by Brittany or Sezar. Participant agrees to further pay their proportionate share of all future Properties acquisition and force pooling costs necessary for the drilling of any subsequent well(s) in the AMI Area within fifteen (15) days of invoice for same. Petroflow retains the option to Cash Call Participant.

. . .

6.1. A Participant's decision to not participate in any particular lease and/or well in the AMI Area (excluding the Initial Project Wells, but, including, without limitation the Other Prospect Wells) will not terminate this Agreement or such Participant's rights hereunder to participate in other leases and/or wells in the AMI Area as set forth in this Agreement.

6.2. After the drilling and completion of the Initial Project Wells, all subsequent wells in the AMI Area (including, without limitation, the Other Prospect Wells) shall be governed by the Joint Operating Agreement; provided that, (i) as set forth in Section 2.1 of this Agreement, Petroflow agrees to sell, and Participant agrees to buy, an undivided working interest in any additional Properties covering or relating to lands located in the AMI Area (including, without limitation, the Other Prospect Wells) of 30.00% BPO; 30.00% APO for Sezar or Brittany if Sezar so designates, . . . and (ii) as set forth in Section 2.2, Participant shall pay actual costs of the leases, title and other costs associated with the Leasehold Interests representing Participant's proportionate share of existing leasehold costs, and Participant will also pay its proportionate share of all future Properties acquisition and force pooling costs necessary for the drilling of any subsequent in accordance with the Joint Operating Agreement.

> . . .
> 11.7. In the event of a conflict between this Agreement and the Joint Operating Agreement, Joint Operating Agreement shall prevail.

(Doc. 47-1, at 2-11.)

Article XVI(2) of the JOA provides:

> [I]f any Party, directly or indirectly through any affiliate, acquires or contracts to acquire any leasehold, royalty, mineral interest, pooled interested under Order of the Corporation Commission, Farmout, Farmout option, or other exploration or operating right or other interest in the oil and gas rights or production within the AMI, or purchases an interest in any entity owning any interests within the AMI, the non-acquiring Party will have the opportunity to participate in the interest within the AMI on the basis of its proportionate share of working interest in the Contract area or the interests set out in the Exhibit "A" . . . .

(Doc. 47-2, JOA, at 17.) The JOA then sets forth a Notification and Election Period providing, *inter alia*, "[w]ithin thirty (30) days of the interest being acquired or contracted for, the acquiring Party will notify the non-acquiring Party in writing of the interest." (*Id.*)

Defendants fulfilled their obligations concerning the Initial Project Wells. Plaintiff contends Defendants are required under section 2.2 of the Agreement to pay a proportionate share of leasehold costs on certain other undeveloped leases (the "Disputed Leases").[4] Defendants deny that they have any obligation regarding the Disputed Leases. Defendants contend the Disputed Leases are "after-acquired" oil and gas leases and that Defendants were entitled to receive notice and an opportunity to participate or decline to participate in them, pursuant to the JOA. Plaintiff failed to provide this notice but contends the JOA is not applicable to the Disputed Leases.

---

[4] The parties dispute which leases comprise the Disputed Leases. Defendants contend Plaintiff attempted unilaterally to assign 885 leases to Defendants, 391 of which are the subject of this lawsuit. Plaintiff seeks unpaid leasehold costs it billed to Defendants associated with 436 leases. Plaintiff contends some of these leases were assigned to Defendants and others were held for the benefit of Defendants, to be assigned to Defendants upon receipt of payment for unpaid leasehold costs.

4

Plaintiff filed suit in the District Court for Tulsa County alleging breach of contract and other claims arising from the Disputed Leases. Defendants removed the case to this Court on the basis of diversity jurisdiction. Defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") on Plaintiff's breach of contract claim and on Defendants' affirmative defense of failure of consideration. Plaintiff filed a motion for partial summary judgment pursuant to Rule 56 on certain arguments and defenses asserted by Defendants. The parties have also filed motions to exclude or strike certain testimony.

## II. Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

Under Rule 56(e), "[i]f a party . . . fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials – including

5

the facts considered undisputed – show that the movant is entitled to it." The Tenth Circuit has held that "a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). The district court must still make the determination that judgment for the moving party is appropriate under Rule 56. *Id.*

### III. Defendants' Motion for Summary Judgment

#### A. Breach of Contract Claim

Defendants contend Plaintiff's breach of contract claim fails as a matter of law because under the plain language of the Agreement and JOA, Plaintiff was required to provide notice and an opportunity to decide whether to participate in the Disputed Leases.

##### 1. Applicable Legal Standards

A contract must be interpreted "to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." Okla. Stat. tit. 15, § 152. The language of the contract is to govern its interpretation, so long as the "language is clear and explicit and does not involve an absurdity." *Id.* § 154; *see also id.* § 155. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." *Id.* § 157. A contract must be interpreted in a manner that will make it operative, definite, reasonable, and capable of being carried into effect. *Id.* § 159.

##### 2. Analysis

Plaintiff contends that, under the plain language of the Agreement, Defendants must pay their proportionate share of costs on the Disputed Leases and are not entitled to a participation notice. Under section 2.1, "Petroflow hereby agrees to sell, and Participant hereby agrees to buy . . . an undivided working interest in Properties covering or relating to lands located in the AMI Area

6

(excluding the Initial Project Wells, but including, without limitation, the Other Prospect Wells)." (Doc. 47-1, at 3.) Under section 2.2, "Participant shall pay to Petroflow actual costs of the leases, title and other costs associated with the Leasehold Interests representing Participant's proportionate share of existing leasehold costs" and "agrees to further pay their proportionate share of all future Properties acquisition and force pooling costs necessary for the drilling of any subsequent well(s) in the AMI Area[.]" (*Id.* at 2-3)[5] "Properties" as defined in the Agreement includes Leasehold Interests, and "'Leasehold Interests' means the oil and gas leases and forced pooling orders/rights described on Exhibit 'A' attached hereto, together with all other oil and gas leases . . . located in the AMI Area, which are all subject to the Petroflow Reserved ORRI, if applicable." (*Id.* at 2.) Plaintiff notes that nothing in these provisions requires a participation notice with respect to future lease acquisitions, unlike many AMI agreements in the oil and gas industry.[6] Plaintiff also contends that pursuant to section 6.2 of the Agreement, the JOA only applies to the drilling of wells, not to undeveloped leases, and that section 6.2 expressly excludes undeveloped leases from the JOA when it states that "all subsequent wells in the AMI Area . . . shall be governed by the [JOA]; *provided that*, (i) as set forth in Section 2.1 of this Agreement Petroflow agrees to sell, and Participant agrees to buy, an undivided working interest in any additional Properties . . . in the AMI Area . . ., and (ii) as set forth in Section 2.2 Participant shall pay the actual costs of the leases . . . associated with the Leasehold Interests representing Participant's proportionate share[.]" (*Id.* at 5 (emphasis added).)

---

[5] Neither "existing leasehold costs" nor "future Properties acquisition" is defined in the Agreement.

[6] Plaintiff also asserts that some of the costs related to the Disputed Leases are "existing leasehold costs" that Defendants are required to pay under section 2.2 of the Agreement.

Defendants argue that because the Agreement does not state how "future Properties acquisition" occurs, Plaintiff is required to follow the notice provision in the JOA with respect to any leases it acquires. Defendants also note that under section 11.7 of the Agreement, the JOA prevails over the Agreement in the event of a conflict and therefore governs its obligations with respect to the Disputed Leases. Defendants argue further that section 6.1 of the Agreement "implies" that it has a right to decide whether to participate in any lease. (Defs.' Mot. for Summ. J. 9.)

Defendants have not shown that Plaintiff's breach of contract claim fails as a matter of law. Defendants have not cited any language in the Agreement that requires Plaintiff to provide a participation notice with respect to undeveloped leases. Instead, Defendants would have the Court infer that "future Properties acquisition" is to be governed by the JOA notice provision. The Court finds such an inference would be contrary to the plain language of sections 2.1 and 2.2 of the Agreement. The Court also notes that under section 6.2 of the Agreement, the JOA governs "subsequent wells in the AMI Area," but excludes from the JOA Defendants' obligations under sections 2.1 and 2.2. (Doc. 47-1, at 5.)[7] While the Agreement provides that the JOA prevails in the event of a conflict between the two documents, Defendants have not shown that the JOA applies to the Disputed Leases as a matter of law. Accordingly, summary judgment is denied with respect to Plaintiff's breach of contract claim.

---

[7] Plaintiff contends the Court should reject the phrase "in accordance with the Joint Operating Agreement" that appears at the end of section 6.2. The Court agrees with Plaintiff that this language must be rejected in order to give effect to the "provided that" clause of section 6.2. *See Fairbanks, Morse & Co. v. Miller*, 195 P. 1083 (Okla. 1921) ("[W]hile clauses in a contract apparently repugnant must be reconciled if it can be done by any reasonable construction, yet, if a subsequent clause is irreconcilable with a former clause, and repugnant to the general purpose and intent of the contract, the same will be set aside.").

### B. Failure of Consideration Defense

Defendants seek summary judgment on their affirmative defense of failure of consideration. Defendants contend they can rescind the Agreement because Plaintiff unreasonably delayed assigning leases to Defendants until they had expired or would soon expire, and as a result, the majority of the Disputed Leases had little to no value by the time they were assigned to Defendants.

Under Oklahoma law, unless the parties consent to rescission, a party must rescind a contract "promptly, upon discovering the facts which entitle him to rescind," and "must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses to do so." Okla. Stat. tit. 14, § 235; *see also Fairchild v. Swearingen*, 377 P.3d 1262, 1266 (Okla. Civ. App. 2014) ("A party seeking to rescind a contract must return 'everything of value' received pursuant to the contract.") (citations omitted).

Defendants do not dispute that they obtained working interests in leases under the Agreement and received their proportionate share of revenue derived from the production of those leases. Nor have they provided any evidence that they sought to rescind the Agreement before this lawsuit. Accordingly, Defendants have not shown as matter of law that they are entitled to rescind the Agreement for lack of consideration.

## IV. Plaintiff's Motion for Partial Summary Judgment

### A. Affidavit of Kim Booth

Defendants filed a motion to strike the Affidavit of Kim Booth (Doc. 43, Ex. D) ("Booth Affidavit"), which is an exhibit to Plaintiff's motion for partial summary judgment. Booth is the Chief Operating Officer of Petroflow. Defendants object to portions of the Booth Affidavit that

Defendants contend are either legal opinions, lacking in foundation, irrelevant, conclusory, hearsay, or in violation of the best evidence rule.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602.

The Court agrees with Defendants that the first sentence of Paragraph Seven of the Booth Affidavit, which characterizes the content of Exhibit A to the Agreement, is hearsay. Accordingly, it will be stricken. However, Booth's remaining statements are permissible under Rule 56(c)(4) because they relate to facts within, or reasonably inferred to be within, her personal knowledge. To the extent Booth's statements represent legal conclusions or are not the best evidence, the Court may discount them accordingly in its analysis. However, Defendants have not shown they are inadmissible. *See Allen v. WHO Alfalfa Milling Co.*, 272 F.2d 98, 100 (10th Cir. 1959) ("[P]arol proof based on knowledge gained independently of the written matter is admissible even though it may pertain to the same matter. . . . To be sure, the written proof might have been more persuasive, but our question is one of admissibility, not weight, which is the province of the trial court."). Booth's statements in Paragraph 14 regarding events that complicated the parties' resolution of the present dispute are relevant to the issue of delay, which Defendants have put at issue in this case. Accordingly, Defendants' motion to strike the Booth Affidavit is granted with respect to the first sentence of Paragraph 7 of the Booth Affidavit and denied in all other respects.

**B. Summary Judgment Analysis**

Plaintiff seeks summary judgment precluding Defendants from asserting five defenses or arguments, as set forth below.

### 1. "Petroflow owned no properties at the time the Agreement was executed for which Sezar was obligated to pay leasehold acquisition costs." (Pl.'s Mot. for Partial Summ. J. 1.)

Plaintiff argues that as a matter of law, Defendants are obligated under the Agreement to pay leasehold costs for the leases Plaintiff acquired through the Equal Acquisition. Defendants state that Plaintiff had no leases to assign at the time the Agreement was executed and that other than the mandatory "Initial Project Wells," Defendants were not obligated to pay costs associated with any leases unless they elected to participate after receiving notice pursuant to the JOA.[8]

The Court finds Defendants' argument is contradicted by the plain language of the Agreement, which obligates Defendants to pay the costs of certain leases without reference to the JOA, as discussed *supra* Part III.A.2. Defendants concede that section 6.2 of the Agreement sets conditions on the application of the JOA by excluding the obligations set forth in sections 2.1 and 2.2, but contend the exclusions "are themselves conditional to the notice requirements of the JOA due to the JOA's superiority." (Defs.' Corrected Resp. to Pl.'s Mot. for Summ. J. 13.) Defendants' reasoning is both circular and contradicted by the language of the Agreement. Under Oklahoma law, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." Okla. Stat. tit. 15 § 157. Defendants' interpretation would nullify the conditions set forth in section 6.2 of the Agreement. Accordingly, Plaintiff's motion is granted as to this argument, and Defendants are precluded from asserting that there are no properties for which they are obligated to pay leasehold costs pursuant to the Agreement.

---

[8] It is undisputed that Plaintiff did not follow the notice requirements of the JOA within thirty days of closing on its acquisition of Equal.

> 2. **"Petroflow did not provide a participation notice prior to acquiring the leases for which Sezar is obligated under the Agreement." (Pl.'s Mot. for Summ. J. 1.)**

Plaintiff contends the Court should reject as a matter of law Defendants' argument that it was entitled to a participation notice for the Disputed Leases. As discussed *supra* Parts III.A.2 and IV.B.1, section 6.2 of the Agreement excludes Defendants' obligations under sections 2.1 and 2.2 from the JOA. The parties do not dispute that the Disputed Leases are otherwise governed by the Agreement and were not developed. Accordingly, Plaintiff's motion is granted as to this argument, and Defendants are not entitled to argue that Petroflow failed to provide a participation notice with respect to the Disputed Leases.

> 3. **"Petroflow did not assign Sezar the leases for which payment is being sought." (Pl.'s Mot. for Summ. J. 1.)**

Plaintiff seeks to preclude Defendants from asserting that Plaintiff breached its obligations under the Agreement by failing to assign leases for which it seeks payment. Section 8.1 of the Agreement requires Plaintiff to assign interests to Defendants "[a]ssuming the full compliance of all provisions herein by Participant" and "after the commencement of drilling operations in each subsequent well." (Doc. 47-1, at 6.) The Disputed Leases were undeveloped and the conditions of section 8.1 were not met, and therefore Plaintiff had no obligation to assign the Disputed Leases. Accordingly, Plaintiff's motion is granted as to this argument, and Defendants are precluded from raising this issue as a defense.

> 4. **"Some of the leasehold acquisition costs being sought by Petroflow involve leases that have expired or are soon to expire." (Pl.'s Mot. for Summ. J. 2.)**

Defendants contend they are not required to pay a proportionate share of costs for leases that have expired because such leases are non-existent and cannot be "subject to the Petroflow ORRI,"

12

as specified in the Agreement's definition of Leasehold Interests. (Doc. 47-1, at 3.) Defendants note that the Agreement could have stated that Defendants must pay leasehold costs for "non-existent leaseholds" but that it did not do so, and consequently they have no obligation to pay for expired or soon-to-expire leases. (Defs.' Corrected Resp. to Pl.'s Mot. for Summ. J. 13.)

Defendants' construction is incongruous with the plain language of the Agreement, which requires Defendants to pay a proportionate share of leasehold acquisition costs for Leasehold Interests. Defendants can point to no exception for expired or soon-to-expire leases. Accordingly, Plaintiff's motion is granted as to this argument, and Defendants are precluded from asserting that they are not obligated to pay leasehold costs they would otherwise owe under the Agreement simply because the leases expired or will soon expire.

> 5. **"Sezar is owed certain amounts under the Agreement, which it may offset against the unpaid leasehold acquisition costs owed to Petroflow." (Pl.'s Mot. for Summ. J. 2.)**

Plaintiff argues that Defendants have waived the affirmative defense of setoff by failing to plead it in their Answer. Although Defendants contend they were owed a credit of $200,000.00 for leases they contributed, Defendants do not dispute that any setoff defense has been waived. *See Glover v. Johnson*, No. CIV-14-936-F, 2016 WL 5854282, at *1 (W.D. Okla. Oct. 6, 2016) (concluding that setoff is an affirmative defense that is waived if not pleaded). Accordingly, Plaintiff's motion for summary judgment is granted as to the defense of setoff.

For the reasons set forth above, Plaintiff's motion for partial summary judgment is granted.

## V. Conclusion

For the reasons stated herein, Defendants Sezar Energy, L.P.'s and Brittany Energy, LLC's Motion for Summary Judgment (Doc. 47) is DENIED; Plaintiff's Motion for Partial Summary

13

Judgment (Doc. 43) is GRANTED; and Defendants' Motion to Strike the Affidavit of Kim Booth (Doc. 51) is GRANTED in part and DENIED in part, as set forth *supra* Part IV.A.

**SO ORDERED.**

**DATED THIS 3rd day of October, 2017.**

_____
**TERENCE C. KERN**
**United States District Judge**